UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL TUCKER,** | **Civil Action No. 13-2908 (FLW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **CHARLES WARREN, JR., et al.,** | |
| **Defendants.** | |

**Wolfson, United States District Judge:**

Petitioner, Michael Tucker ("Tucker" or "Petitioner"), filed the instant petition for habeas

corpus relief pursuant to 28 U.S.C. § 2254, following a lengthy appeal and post-conviction relief

process in the New Jersey state courts.  Here, he claims, *inter alia*, that his constitutional rights

were violated when the prosecutor at his trial compared a statement he (Tucker) made before he

was read his *Miranda*[1] rights, with statements he made after he was given that warning.  For the

reasons set forth below, this Court concludes that the New Jersey state courts' rejection of this and

his other claims was not contrary to, or an unreasonable application of, United States Supreme

Court law.  Nor was it based on unreasonable determinations of the facts.  Accordingly, his petition

for habeas relief is denied.

## I.     BACKGROUND

Petitioner was convicted in New Jersey state court of first-degree felony murder, first-

degree armed robbery, and second-degree possession of a weapon for unlawful purposes, all in

connection with the robbery and stabbing death of his mother.  The facts underlying his conviction

---

[1]      *Miranda v. Arizona*, 384 U.S. 436 (1966).

are concisely stated by the New Jersey Supreme Court, in its decision affirming Petitioner's conviction on direct review:

> On June 11, 2000, defendant Michael Tucker, called 9–1–1 and reported that he had returned home to discover his mother's dead body. The Piscataway police responded to the home and found the lifeless body of Mary Tucker. Patrolman James Richards inspected the house and found no evidence of a struggle or forced entry.
>
> Richards questioned both defendant and his girlfriend, Tracy Stepney, who also was present. Defendant stated that he last saw his mother two days earlier on Friday, June 9, 2000. Defendant drove his mother home from the grocery store and then left to spend the weekend with Stepney in Plainfield. On Saturday, he and Stepney went to New York City for the day. On Sunday afternoon, they returned to his mother's home and found her lifeless body. Defendant claimed he also found the back door unlocked. In a separate interview, Stepney provided a similar account, also mentioned that the back door was unlocked.
>
> The police transported defendant to police headquarters where they administered *Miranda* warnings. At some point, the police arrested defendant on unrelated outstanding warrants. The record does not reveal whether he was arrested before or after he was given Miranda warnings and agreed to speak to the police. However, he reiterated that he last saw his mother on Friday following their trip to the grocery store. Defendant did not mention that he had taken his mother to the bank in either of his statements.
>
> Meanwhile, the police investigation revealed the victim's purse in a bedroom closet containing $747 in cash and a checkbook with the last entry made out to cash in the amount of $3000. The police learned that the victim cashed a check at the United National Bank in Plainfield on Friday, June 9, and that she received thirty $100 bills.
>
> In a second interview of defendant at police headquarters, the police again informed defendant of his Miranda rights and interviewed him. On that occasion, defendant acknowledged that he had taken his mother to the bank, but claimed that he waited for her in the car. Defendant explained that the $520 in his pocket was money he earned repairing cars. He displayed five $100 bills and one $20 bill.
>
> The police later obtained a bank surveillance tape that showed the victim entering the bank at approximately 9:25 a.m. on June 9, 2000.

2

> The tape also revealed that defendant was present and stood behind his mother as she spoke to the bank teller. He wore denim shorts that the police later discovered in Stepney's apartment. Blood tests conducted on stains found on the shorts revealed that some of the blood was the victim's, some was defendant's, and some was of an unknown third person.

*State v. Tucker*, 190 N.J. 183, 185-86 (2007) (footnote omitted).

After a trial before a jury, as noted above, Tucker was convicted of first-degree felony murder, N.J.S.A. 2C:11–3(a)(3); first-degree armed robbery, N.J.S.A. 2C:15–1; and second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39–4(c). He was also charged with first-degree murder, N.J.S.A. 2C:11–3a(1)(2), but the jury could not reach a verdict on that count. Following his conviction, Tucker was sentenced in 2003 to a cumulative term of life imprisonment with thirty years of parole ineligibility.

Tucker then filed an appeal, and spent the next six years winding his way through the direct appeal process. On December 29, 2005, the New Jersey Appellate Division reversed the conviction and remanded for a new trial on *Miranda* grounds, holding that the trial court erred in allowing the prosecutor to comment on Tucker's post-*Miranda* statements that omitted reference to his visit to the bank with his mother on the day of her murder. *See State v. Tucker*, No. A-4772-03T4, 2005 WL 3543180, at *7-8 (N.J. Super. Ct. App. Div. Dec. 29, 2005), *rev'd*, 190 N.J. 183 (2007). The state court further hinged its reversal on the prosecutor's reference to a potential motive for the robbery—that Tucker had an outstanding medical bill for $1,594 that he planned to use the $3,000 in cash from the bank visit to pay off. *Id.* The court found that this reference impermissibly suggested that the jury could base guilt on Tucker's impoverished status. Because the state court was invalidating the conviction, it did not address all of Tucker's arguments in that appeal. *Id.* at *8.

3

Two years later, in 2007, the New Jersey Supreme Court granted certification, reversed the Appellate Division, and remanded the case for further proceedings.  *See State v. Tucker*, 190 N.J. 183 (2007).  The New Jersey Supreme Court disagreed with both of the appellate court's rulings, holding instead that Tucker's *Miranda* rights were not violated and that evidence of his medical debt and status as unemployed did not violate any legal right.  *Id.* at 190-91.  The Court vacated the appellate court's ruling, and remanded for further proceedings.

On remand, another two years later in 2009, the Appellate Division addressed Tucker's remaining arguments.  This time, the state court held that his conviction and sentence were valid.  *See State v. Tucker*, No. A-4772-03T4, 2009 WL 614527, at *4 (N.J. Super. Ct. App. Div. Mar. 12, 2009).

Once the direct appeal process concluded, Tucker sought further relief via a post-conviction relief (PCR) application in the state courts.  He filed his application for PCR in 2010 before the state trial court.  The trial court denied him both an evidentiary hearing and any substantive relief.  *See* Transcript ("Tr.") dated July 23, 2010, ECF No. 15-3 (denying request for evidentiary hearing); *State v. Tucker*, No. A-2405-10T3, 2012 WL 1382223, at *3-6 (N.J. Super. Ct. App. Div. Apr. 23, 2012) (discussing trial court's ruling on PCR).  The Appellate Division— now reviewing this case for the third time—affirmed the trial court's denial of PCR in a 2012 decision.  *See Tucker*, 2012 WL 1382223, at *6.  Tucker sought certification from the New Jersey Supreme Court, which was denied on November 9, 2012.  *See State v. Tucker*, 212 N.J. 459 (2012).  Several months thereafter, on May 6, 2013, Tucker filed his initial Petition in this Court and, on

4

June 18, 2013, an Amended Petition.  He seeks habeas relief on six grounds, described below.

Respondents have filed an Answer, and the matter is now ripe for disposition.[2]

## II.     STANDARD OF REVIEW

Section 2254(a) allows federal habeas courts to entertain only those claims alleging that a

person is in state custody "in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a).  Petitioner has the burden of establishing each claim in the petition.  *See Eley*

*v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Under 28 U.S.C. § 2254, as amended by the Anti–

Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas

corpus cases must give considerable deference to determinations of the state trial and appellate

courts.  *See Renico v. Lett*, 559 U.S. 766, 772 (2010).

Where a state court adjudicated petitioner's federal claim on the merits,[3] a federal court

"has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary

to, or involved an unreasonable application of, clearly established Federal Law, as determined by

the Supreme Court of the United States,' or 'was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132

---

[2]     The Court notes that Respondent's Answer was not initially filed on the Court's docket along with the exhibits to its Answer.  *See* ECF Nos. 10-18.  However, it is apparent from Petitioner's reply, filed within 45 days of the filing of the exhibits, that he received a copy of the Answer.  *See* Pet's Traverse, ECF No. 19, p. 10 (responding to argument made "at page 11 of the Answer").  The Answer was subsequently filed on the Court's docket.  *See* Answer, ECF No. 20.

[3]     "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)[4]). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d) (1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the

---

[4]    Section 2254(d) reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 529 U.S. at 413.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

## III.    DISCUSSION

As noted above, Petitioner raises six grounds for habeas relief in his Amended Petition.  In Ground One, he asserts that he was "deprived of a fair trial as a result of the State's improper reference to [his] employment status"[5] at the time of the murder.  Am. Pet., ECF No. 4 at 6. Drawing in part on the right to remain silent established by *Miranda*, Petitioner asserts, in Ground Two, that he was "denied a fair trial as the result of the State's improper reference to Defendant's pre-arrest silence."  *Id.* at 7.

The remaining four grounds all sound in ineffective assistance of counsel.  In Ground Three, Petitioner asserts that his appellate counsel failed to challenge the trial court's decision to allow in testimony about a drug purchase that he made the day after the murder.  *See id*. at 9.

---

[5]    To improve readability, the Court has altered the capitalization of the quotations from the Petition.

Ground Four attacks Petitioner's trial counsel for failing to present the "exculpatory testimony" of witnesses Yajaira Taylor and Lawrence Shallo, and for failing to present evidence that he (Tucker) had found $3500 in $100 bills in his mother's home after the murder. *See id.* at 10. In Ground Five, Petitioner asserts that his trial counsel erred in failing to present evidence that he did not kill his mother to obtain money because he was unemployed and had an outstanding medical bill but, rather, that he was unemployed due to a medical condition. *See id.* at 11. Finally, in Ground Six, Petitioner asserts what is, in essence, a cumulative error claim. He asserts that his trial counsel failed to present exculpatory evidence; his appellate counsel failed to challenge the admission of drug evidence on appeal and failed to sufficiently argue against harmless error; and that both counsel failed to show that he was prejudiced by the lack of exculpatory evidence. *See id.* at 13-14. The Court addresses these arguments in turn.

A.     **Employment Status Ground**

 This ground—that the State's prosecutor improperly referred to his unemployed status—clearly lacks legal merit. Petitioner relies on New Jersey state law holding it "improper and injurious" for a prosecutor to refer to, or introduce evidence of, a defendant's "impecuniosity," *i.e.*, depressed economic state, for the purpose of arguing that the "defendant had no apparent means of income and hence was likely to commit a crime for dollar gain." *State v. Mathis*, 47 N.J. 455, 472 (1966) *quoted in State v. Patterson*, 435 N.J.Super. 498, 510 (App. Div. 2013). Although the Appellate Division was initially persuaded by this argument on direct review, following remand from the New Jersey Supreme Court, it rejected Tucker's challenge.

According to the appellate court's findings, at the trial, Tucker's employment status and medical debt was referenced several times. The prosecutor argued in his opening statement that Tucker committed the robbery in order to pay his medical debt. *Tucker*, 2005 WL 614527, at *5.

8

During the trial, the prosecution introduced evidence of the $1,594 medical debt itself.  *Id.*  In addition, the prosecution introduced testimony, through Tucker's sister, that he was not employed full-time but only occasionally worked on cars, and to the extent he earned money from that work, "he didn't make very much."  *Tucker*, 2009 WL 614527, at *2.  Lastly, in his summation, the prosecutor referred to the medical debt and Tucker's unemployed status as proof of Tucker's motive for the murder and robbery.  *Tucker*, 2009 WL 614527, at *6.

While the Appellate Division found some of the prosecutor's references to the defendant's impoverished status troubling, the appellate court rejected the notion that this evidence affected the jury's verdict:

> The proofs against defendant, independent of the impecuniosity evidence, however, are overwhelming in light of the Court's determination that defendant's initial statements to police were admissible. The proofs now include: his failure to mention the bank visit when first interviewed, a film of him standing behind his mother while she withdrew $3000 in $100 bills, her bloodstains on the shorts he is wearing on the surveillance tape despite his assertions that he did not discover her corpse until two days later while wearing different clothing, and his possession of five $100 bills.

*Tucker*, 2009 WL 614527, at *2.  Therefore, the court concluded that any error was harmless.  *Id.* at *3.

As Respondents correctly argue in their Answer, federal habeas relief lies only for errors in federal, not state, law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir.), *cert. denied sub nom. Glenn v. Walsh*, 134 S.Ct. 2700 (2014).  Even in his traverse, after being placed on notice of this argument in Respondents' Answer, Petitioner cites solely to state law in support of his argument.  *See* Pet's Traverse, ECF No. 19 at 5.  He has not pointed to any United States Supreme Court case law holding that reference

9

to a defendant's economic status amounts to a constitutional violation.  Accordingly, Petitioner has not demonstrated that the state court's ruling was contrary to federal law, and his request for habeas relief on Ground One is denied.

### B.    *Miranda* **Silence Ground**

Tucker's challenge to the state court's *Miranda* rulings requires a more in-depth analysis. Simply put, Tucker argues that his constitutional rights were violated when the trial court allowed in evidence, and allowed the prosecutor to refer to, Tucker's omission of his visit to the bank with his mother in his first two statements to the police.  The last reasoned state court opinion addressing this issue is the New Jersey Supreme Court's decision on direct review.

Recall the New Jersey Supreme Court's factual findings that, after Tucker called 9-1-1 to report finding his mother's body, he was questioned by police. *Tucker*, 190 N.J. at 185.  He was subsequently taken into custody in connection with outstanding warrants against him.  *Id.*  While in custody, he gave an initial statement to the police about his interactions with his mother on the day of her murder.  *Id.* at 185.  In both his responses to the questioning at his mother's home, and his initial statement to the police made while in custody, he omitted any reference to visiting the bank with her as she withdrew $3000 in $100 bills.  *Id.*  During a second custodial interview, however, Tucker acknowledged that he had gone to the bank with his mother that fateful day, once the police independently learned about his mother's bank visit.  *Id.*  Tucker claimed, during this second round of questioning, that he had waited in the car while she went inside the bank.  *Id.* Contrary to his statement, a bank surveillance video showed Tucker inside the bank, standing beside his mother and wearing jean shorts that were subsequently found to be stained with her blood.  *Id.*

Before the New Jersey Supreme Court on direct review, Tucker argued that the prosecutor's statements at trial and the eliciting of testimony about his contradictory statements regarding the visit to the bank ran afoul of *Miranda*.  First, he pointed to the prosecutor's opening statement:

> You're going [to] hear testimony in this courtroom regarding some things that Michael Tucker said to law enforcement. [H]e didn't tell anybody that he went to the bank in the beginning. It wasn't until law enforcement found out that he went to the bank that he started telling stories and telling people that he did in fact go to the bank. But there will be more testimony regarding his story about going to the bank. Pay close attention to that and I will revisit that issue in my closing argument.

*Id.* at 187.  As the New Jersey Supreme Court notes in its ruling, the prosecutor elicited testimony from the police at the 9-1-1 scene, and those who questioned Tucker at the police station, that "he said nothing about taking his mother to the bank."  *Id.*  Then, during his summation, the prosecutor again highlighted that Tucker did not mention the bank in his first two statements—the pre-*Miranda* statement at his mother's home, and the initial statement he made while in custody.  *Id.* Because Tucker did not testify or present any witnesses during the trial, no additional testimony was put before the jury to controvert these facts.  *Id.*  Ultimately, the jury did not convict him of the murder charge, but found him guilty of the felony murder, burglary, and weapons charges.

In rejecting Tucker's argument, the New Jersey Supreme Court analogized these facts to the United States Supreme Court's decision in *Anderson v. Charles*, 447 U.S. 404 (1980).  The state court first explained that the *Anderson* Court ruled that a prosecutor may refer to a defendant's post-*Miranda* statement that omits events when impeaching the defendant with inconsistent trial testimony that includes the omitted events. *Tucker*, 190 N.J. at 189 (discussing *Anderson*, 447 U.S. at 408-09).  In that case, the United States Supreme Court reasoned that although "[e]ach of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts

11

included in the other version," Supreme Court jurisprudence "does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case." *Anderson*, 447 U.S. at 409.

The New Jersey court then applied *Anderson*'s rationale in its own analysis, in addition to discussing state law. *Id.* at 189-90. With respect to *Anderson*, the state court reasoned:

> We are in accord with the reasoning in *Anderson*. A defendant's right to remain silent is not violated when the State cross-examines a defendant on the differences between a post-*Miranda* statement and testimony at trial. When a defendant agrees to give a statement, he or she has not remained silent, but has spoken. Thus, we conclude that it is not an infringement of a defendant's right to remain silent for the State to point out differences in the defendant's testimony at trial and his or her statements that were freely given.
>
> Although the present case does not involve inconsistencies between a statement and defendant's testimony at trial, it does involve inconsistencies in several statements that were freely given and admitted into evidence. We find no meaningful distinction between the two situations that would justify a different result. In both instances, a defendant has waived the right to remain silent and freely spoken.
>
> *               *               *
>
> We hold that whether the asserted inconsistencies by a defendant are between two or more statements or between a statement and testimony at trial, the State may seek to impeach the validity of those statements. In both instances, the defendant has not remained silent and therefore, any inconsistency may be challenged.

*Id.* In short, the New Jersey Supreme Court found no constitutional infirmity in the prosecutor pointing to Tucker's omission of the bank visit in his early statements to the police. In the state court's view, these omissions did not constitute "silence" entitled to *Miranda* protection.

In his papers to this Court, Tucker has not pointed to any error in the state court's application of *Anderson*. Petitioner did not file a brief with his initial or amended petition, and does not reference the New Jersey Supreme Court's analysis in his traverse. Instead, he argues

that the United States Supreme Court's decision in *Doyle v. Ohio* compels habeas relief in this case.  426 U.S. 610 (1976).  He is mistaken.

Although the New Jersey Supreme Court did not specifically reference *Doyle*, the *Anderson* United States Supreme Court decision, upon which the New Jersey court relied, expressly distinguished *Doyle* from its facts.  *Anderson* explains that

> *Doyle* bars the use against a criminal defendant of [post-*Miranda*] silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent.

447 U.S. at 408.  So, according to the *Anderson* Court, *Doyle* does not apply to cases that involve prior inconsistent *statements* because, in those cases, the defendant has chosen to break his silence.

As the New Jersey Supreme Court held, neither *Anderson* or *Doyle* prohibit references at trial to a defendant's previous omission of key facts in statements voluntarily made to the police. Indeed, as the Third Circuit has expressly noted, "[n]ot every reference to a defendant's silence . . . . results in a *Doyle* violation."  *McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 104 (3d Cir. 2012).[6]  Tucker has not pointed to any post-*Anderson* United States Supreme Court case law to the contrary.[7]

---

[6]     This is not a case where the defendant refused to answer *any* questions during a custodial interrogation, and explicitly invoked his right to remain silent.  In such an instance, it remains problematic "for a prosecutor to cause the jury to draw an impermissible inference of guilt from a defendant's post-arrest silence after a defendant is Mirandized." *United States v. Edwards*, 792 F.3d 355, 357 (3d Cir. 2015) (quoting *Gov't of the V.I. v. Martinez*, 620 F.3d 321, 335 (3d Cir. 2010)) (internal quotation marks omitted).  *See also United States v. Lopez*, --- F.3d ---, 2015 WL 10692810, at *4 (3d Cir. 2016) (finding *Doyle* error where prosecutor impeached defendant's trial testimony with post-*Miranda* silence).

[7]     In this regard, the Court of Appeals for the Third Circuit noted that there is no "'clearly established Federal law, as determined by the Supreme Court of the United States,' [that] prevents

13

More to the point, under AEDPA, this Court must defer to the state court's ruling and unless that ruling is contrary to or involved an unreasonable application of United States Supreme Court law. Tucker has not shown that the New Jersey Supreme Court's ruling fails this legal standard.[8] Nor has he challenged the factual findings upon which the state court's ruling was based. Hence this habeas claim necessarily fails. *Accord Clarke v. Spencer*, 582 F.3d 135, 143 (1st Cir. 2009) (reasoning on denial of federal habeas relief that "[t]he Commonwealth could properly introduce evidence of what Clarke told Detective Gavin during the interrogation, before Clarke invoked his right to remain silent. The fact that what Clarke told Detective Gavin contradicted the story that Clarke told jurors at trial was fair game during closing argument.").

## C.    Ineffective Assistance Grounds

Petitioner next brings several ineffective assistance challenges against both his trial and appellate counsel. For the following reasons, the Court concludes that his ineffective assistance challenges fail on the merits.

### 1.    Procedural Default

---

a defendant's [post-*Miranda*] selective silence from being used against that defendant at trial." *McBride*, 687 F.3d at 104. Moreover, the circuit has explained,

> the [United States Supreme] Court has held that *Doyle* is not violated where the prosecutor impeaches a defendant with his pre-arrest silence, *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), uses a defendant's voluntary statements to the police following *Miranda* warnings, *Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), or uses a defendant's post-arrest silence before *Miranda* warnings have been given.

*Gov't of Virgin Islands v. Davis*, 561 F.3d 159, 164 (3d Cir. 2009).

[8]      Although Tucker does not challenge the state courts' application of *Anderson*, this Court notes that the state courts identified the proper legal principle from Supreme Court case law, and reasonably applied it to the facts of Tucker's case, thereby satisfying 28 U.S.C. § 2254(d)(1).

At the outset, the Court addresses procedural default. Before addressing the merits of Petitioner's ineffective assistance claims, the Appellate Division made clear when affirming the lower court's denial of Petitioner's PCR application, that his PCR was untimely under state law.[9] That court invoked New Jersey Court Rule 3:22-12, which deems untimely applications for post-conviction relief made five years after the petitioner's conviction, and the court discussed the merits only as an alternative ground for affirmance. When New Jersey courts have relied on this state-law basis for rejecting PCR claims, the Court of Appeals for the Third Circuit has found that reliance sufficient to justify a finding of procedural default. *See, e.g., Dreher v. Attorney Gen. of New Jersey*, 273 F. App'x 127, 136 (3d Cir. 2008); *Johnson v. Pinchak*, 392 F.3d 551, 563 (3d Cir. 2004).

The procedural default doctrine generally bars federal courts from adjudicating a claim that the petitioner failed to first raise in state court "at the time or in the place that state law requires," unless he or she can show "cause for the default and prejudice from a violation of federal law." *Trevino v. Thaler*, 133 S.Ct. 1911, 1917 (2013). Procedural default is an affirmative defense, however, and respondents did not argue procedural default here. *See Welch v. United States*, 136 S. Ct. 1257, 1270 (2016) ("procedural default is an affirmative defense that must be raised") (citing *Jenkins v. Anderson*, 447 U.S. 231, 234 n.1 (1980)). But, in some instances, federal courts can

---

[9]

> We note at the outset that defendant filed his PCR petition more than five years after his October 17, 2003 judgment of conviction and because he has shown neither excusable neglect nor exceptional circumstances, the instant application is time-barred. R. 3:22–12. Neither has he demonstrated relaxation of the rule is required in the interest of justice. R. 1:1–2. Nevertheless, we proceed to address the substance of defendant's claims, as did the PCR judge.

*State v. Tucker*, 2012 WL 1382223, at *3.

raise procedural default *sua sponte*. *Evans v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 656 (3d Cir. 2011); *Sweger v. Chesney*, 294 F.3d 506, 520-22 (3d Cir. 2002); *Szuchon v. Lehman*, 273 F.3d 299, 321 n. 13 (3d Cir. 2001). And, the doctrine applies even when the state court reached the merits as an alternative holding, like the appellate PCR court did here. *See Dreher*, 273 F. App'x at 135 n.11 (discussing *Johnson*, 392 F.3d at 558).

While this Court might consider raising procedural default *sua sponte*, the Court finds that it would be unhelpful to do so in this case. Courts raise procedural default *sua sponte* where the respondent has not expressly waived the defense, and the court wishes to afford the state court the opportunity to rule on a claim in the first instance: "Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Szuchon*, 273 F.3d at 322 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)). Comity is less of a concern here because the state courts addressed the claims on their merits, albeit in the alternative.

Moreover, federal courts consider prejudice to the petitioner when deciding whether to *sua sponte* raise procedural default. *See Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (directing lower courts to consider prejudice when *sua sponte* raising a procedural bar, such as statute of limitations, exhaustion, or procedural default); *Evans*, 645 F.3d at 656-57 (considering prejudice). For one, the procedural history of the state court proceedings reveals that Petitioner's untimeliness was substantially due to the extensive appellate process on direct appeal which, itself, took over five years to complete. Turning to the proceedings in this Court, the instant petition was filed in May 2013, and procedural default has not been raised to date, which means Petitioner has not yet been given an opportunity to make any arguments against such a finding. Providing

16

Petitioner an opportunity to do so at this late stage would only prolong the Court's resolution of this already aging case.

Furthermore, Petitioner did not have an opportunity to raise his ineffective assistance claims until he reached the PCR stage of the proceedings.  Recent U.S. Supreme Court rulings have crafted an exception to the procedural default doctrine where a petitioner was functionally foreclosed from raising an ineffective assistance of trial counsel claim in the state courts.  *See Trevino*, 133 S.Ct. at 1918, 1921; *Martinez v. Ryan*, 132 S.Ct. 1309, 1318-21 (2012).[10]  In crafting this exception to the procedural default doctrine, the United States Supreme Court highlighted the importance of federal habeas review as a means for ensuring that federal constitutional violations at the state level are fully remedied.  *Trevino*, 133 S.Ct. at 1916-17 (discussing *Martinez*, 132 S.Ct. at 1315-16).  While Petitioner's circumstances, here, somewhat differ from those outlined in this line of cases, the concerns underlying these rulings ring true:  courts should be reticent to bar from federal review those cases in which the defendant was unable to bring an ineffective assistance claim until the post-conviction stage.  For these reasons, the Court will not exercise its discretion to raise the procedural default defense *sua sponte*, and will turn to the merits.

### 2.      Merits

---

[10]      Specifically, those Supreme Court decisions held that lower courts may find cause and prejudice to excuse a procedural default where:  (1) the petitioner raised a substantial ineffective assistance challenge; (2) the petitioner's post-conviction counsel failed to properly raise the challenge in accordance with state procedural rules; (3) under state law, the petitioner's first opportunity to bring the ineffective assistance challenge was in the post-conviction proceeding; and (4) state law either requires that the ineffective assistance claim be raised in the post-conviction proceeding context or, under the state procedural framework, the petitioner did not have a meaningful opportunity to raise the ineffective assistance challenge until the post-conviction stage.  *Id.*

Petitioner raises varied ineffective assistance claims against his trial and appellate counsel but, despite their unique facts, each claim fails because Petitioner cannot demonstrate that he was prejudiced by the alleged errors.  To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  In other words, counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  The performance and prejudice prongs of *Strickland* may be addressed in either order, and if, like here, "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697.

As noted above, Petitioner's ineffective assistance claims are that:  (a) his appellate counsel failed to challenge the trial court's decision to allow in testimony about a drug purchase that he made the day after the murder (Ground Three); (b) his trial counsel failed to present the "exculpatory testimony" of witnesses Yajaira Taylor and Lawrence Shallo, and failed to present evidence that he (Tucker) had found $3500 in $100 bills in his mother's home after the murder (Ground Four); (c) his trial counsel erred in failing to present evidence that he did not kill his mother to obtain money in light of his unemployment status and his desire to pay his outstanding medical bill but, rather, that he was unemployed due to a medical condition (Ground Five); and (d) a cumulative error claim (Ground Six).  In this last ground, Tucker specifically asserts that his trial counsel failed to present exculpatory evidence, his appellate counsel failed to challenge the

18

admission of drug evidence on appeal and failed to sufficiently argue against harmless error, and both counsel failed to show that he was prejudiced by the lack of exculpatory evidence.

Even assuming that each of these allegations of ineffective assistance is true, there was overwhelming evidence of Petitioner's guilt presented at the trial.   Indeed, in ruling, in the alternative, on Petitioner's claim that his trial counsel erred by failing to present the testimony of Yajaira Taylor and Lawrence Shallo, the Appellate Division held as much when affirming the lower court's denial of PCR.   Petitioner claimed, to the Appellate Division, that these two witnesses would have testified that they saw other people at his mother's home around the time she was robbed and killed.  The state court recounted the evidence against Petitioner, as explained by the trail court on PCR:

> the proof of defendant's guilt was overwhelming. Such proofs include:
>
>> defendant's failure to mention the bank visit when first interviewed, a film of him standing behind his mother while she withdrew $3000 in $100 bills, her bloodstains on the shorts he is wearing on the surveillance tape despite his assertions that he did not discover her corpse until two days later while wearing different clothing, and his possession of five $100 bills.
>
> [*Tucker*, *supra*, No. A–4772–03 (Mar. 12, 2009) (slip op. at 6).]
>
> The evidence marshaled against defendant amply demonstrates that even if trial counsel was deficient, defendant would be unable to satisfy the second prong of the *Strickland/Fritz* test, that without counsel's error, the outcome of the case would have likely been different.

*State v. Tucker*, No. A-2405-10T3, 2012 WL 1382223, at *5 (N.J. Super. Ct. App. Div. Apr. 23, 2012) (alterations in original).   This ruling is certainly consistent with, and not contrary to *Strickland*.  By holding that the overwhelming evidence presented against him at trial would not

19

have been undermined by any testimony presented by the two witnesses (Yajaira Taylor and Lawrence Shallo), the state court reasonably concluded that the proposed testimony could demonstrate only that others were also involved in the robbery or murder.  The testimony would not have exculpated Petitioner and, therefore, fails to undermine confidence in the jury's verdict.

Petitioner likewise fails to demonstrate prejudice with respect to his other ineffective assistance claims, hence these claims would fail even under the less-deferential *de novo* review standard.  As for his claim that appellate counsel failed to challenge the admission of evidence regarding a drug purchase,[11] omission of the drug purchase evidence would not have led the jury to ignore the overwhelming physical evidence such as the blood stains on his shorts, or the five $100 bills found on his person at the time of arrest.  In addition, his own inconsistent statements about his accompanying his mother to the bank, viewed alongside the video tape showing him in the bank, irreparably tarnished his credibility before the jury.  Thus, even under a *de novo* review, this Court would conclude that Petitioner cannot show a "probability sufficient to undermine confidence in the outcome" of his trial.  *Strickland*, 466 U.S. at 694.  As for his contention that trial counsel should have argued that he was unemployed due to a medical condition, this Court agrees with the state courts that this evidence also would not have led the jury to discount the physical evidence against him and would not have rehabilitated his poor credibility.  In his Ground Six, to the extent this claim asserts cumulative errors, the Court's rejection*, infra*, of the drug evidence claim and the witness testimony claim means that Petitioner cannot rely on that claim to suggest a cumulative error.  Moreover, to the extent Tucker is raising a generalized claim that his

---

[11]     At trial, an associate of Tucker's "testified that drugs were purchased with a $100 bill provided by defendant, and that they then consumed drugs over the weekend of June 9, 2000." *Tucker*, 2012 WL 1382223, at *3.  This was the day following the robbery and murder.

trial and appellate counsel failed to present or address additional, missing exculpatory evidence, Petitioner has not explained what this evidence consists of, or argued how it would have undermined the overwhelming evidence presented against him at trial.[12]  Accordingly, this Court finds that the state court's rejection of his ineffective assistance of counsel claims was consistent with *Strickland*, and that federal habeas relief is unwarranted.

## IV.      CERTIFICATE OF APPEALABILITY

Pursuant to AEDPA, an appeal may not be taken to the Court of Appeals from a district court's order entered in a § 2254 proceeding unless a judge issues a certificate of appealability. Such a certificate is issued where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); s*ee also* 28 U.S.C. § 2255(d); *Gonzalez v. Thayer*, --- U.S. ---, 132 S. Ct. 641, 648 (2012).  In this case, the Court denies a certificate of appealability because jurists of reason would not find it debatable that Petitioner has failed to make a substantial showing of the denial of a constitutional right.

---

[12]      Petitioner, further, requests an evidentiary hearing.  Because the Court is denying habeas relief on all of his ineffective assistance grounds based on the state court record, his request for an evidentiary hearing is denied as moot.

**V.  CONCLUSION**

      For the foregoing reasons, Petitioner's habeas petition is DENIED.  An appropriate Order accompanies this Opinion.

                            /s/ Freda L. Wolfson
                            Hon. Freda Wolfson
                            District Judge

Dated:  May 24, 2016